Hon. John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUNWOOD CONDOMINIUM ASSOCIATION, a Washington nonprofit corporation,<br><br>                              Plaintiff,<br><br>v.<br><br>AETNA CASUALTY AND SURETY COMPANY OF ILLINOIS, an Illinois Corporation, et al.,<br><br>                            Defendants. | No: 2:16-CV-01012-JCC<br><br>**PLAINTIFF SUNWOOD CONDOMINIUM ASSOCIATION'S REPLY TO ST. PAUL'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR:<br>September 29, 2017 |

REPLY TO ST. PAUL'S OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT

STEIN, SUDWEEKS & HOUSER
2701 FIRST AVENUE, SUITE 430
SEATTLE, WA 98121
PHONE: 206-388-0660   FAX: 206-286-2660

**I       St Paul's Known Loss Argument Is Based Upon A Misrepresentation Of The Facts.**

St. Paul correctly notes at page 7 of its Opposition (Dkt. 103) that in order to establish a known loss defense St. Paul must prove that the Association subjectively knew the loss would occur at the time the Association first purchased insurance from St. Paul on June 28, 1997. In order to meet its burden of proof, St. Paul claims that in 1994 and 1996 there were certain deck repairs that demonstrated that the buildings "were susceptible to leakage and rot and these deck repairs create a material issue of fact whether the loss was fortuitous." (Dkt. 103, 7:24-8-2)

However, what St. Paul fails to tell this Court is that the decks in questions were fully repaired in 1996 and that the Association disclosed the fact that these decks had been repaired in its initial application for insurance with St. Paul. (See Exs. 1, p. 3, 2 and 3 to Sudweeks Dec.)

Thus, in order for St. Paul to establish a known loss defense St. Paul would have to establish that as of June 28, 1997, the Association subjectively knew that the 1996 deck repairs were inadequate and water damage behind the stucco was inevitable. Because there is no evidence that establishes that in June of 1997 the Association knew that the deck repairs were inadequate and that water damage behind the stucco was inevitable, summary judgment should be granted as to St. Paul's known loss/loss in progress affirmative defense.

**II      St. Paul's Additional Fortuity Argument Is Based Upon A Case That Is Completely Distinguishable**

St. Paul also argues that the Association's loss is not fortuitous because there is supposedly evidence that the Association failed to maintain its building by allowing visible stucco holes to remain unrepaired and that since the Association could have prevented at least some of the damage to the wall assemblies by fixing these holes, the loss is not fortuitous. According to St. Paul the loss is not fortuitous "because rainfall over an entire year is a certainty and the damage mechanism was known." (Dkt. 103: 8:21-22). In support of this argument St. Paul cites *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277 (6th Cir. 1995).

In *Arkwright,* the Court determined that damage resulting from an intentional decision to demolish a building knowing that there would be asbestos released was not fortuitous. The

REPLY TO ST. PAUL'S OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 1

STEIN, SUDWEEKS & HOUSER
2701 FIRST AVENUE, SUITE 430
SEATTLE, WA 98121
PHONE: 206-388-0660   FAX: 206-286-2660

*Arkwright* Court explained that there could be no coverage for a "plaintiff, who undertakes deliberate damage-inducing actions with known consequences" and "losses stemming from [the plaintiff's] deliberate actions, taken with full awareness of the probable and intended consequences, cannot be considered fortuitous. *Arkwright*, 51 F.3d at 1282.

Here, there is no evidence the Association engaged in "deliberate damage-inducing actions with known consequences." In fact, there is no evidence that the Association knew that there were holes in the stucco walls that if left unrepaired would cause the extensive damage that was discovered by intrusive investigation in 2014. The only evidence that St. Paul cites to support its argument is a statement from its expert, Dethlefs, in which Dethlefs states that, while the damage at Sunwood is not actually visible, that "much if not the majority of the damage behind the stucco could have reasonably been deduced by a reasonable person." (Dkt. 86, 3:17-19)

Not only is Dethlefs' opinion that a "reasonable person" could deduce hidden damage behind stucco based upon tiny holes that were not readily visible beyond the scope of his expertise as a structural engineer, it flies in the face of the record before the Court. For example, in 2012 two construction professionals, Western Architectural and J2 Consulting, inspected the two stucco building and failed to "deduce" the existence of hidden damage behind the stucco. If experienced construction professionals could not detect the hidden damage at Sunwood from a visual inspection when they were looking for damage, then it logically follows that an average unit owner would not be able to deduce the existence of the hidden water damage at Sunwood.

Furthermore, St. Paul's 30(b0(6) witnesses admitted that prior to the discovery of the hidden damage in 2014, all known problems in the stucco buildings were repaired by the Association. (Dkt 83-4, p. 47) Thus, based upon St. Paul's complete failure to introduce any evidence that the Association caused and intended the damage at issue, and St. Paul's admission that the Association repaired all known problems, summary judgment should be granted as to St. Paul's fortuity defense.

III **Deterioration Is A Separate Peril From Weather And Repeated Seepage Of Water.**

St. Paul's claims that any gradual damage is barred by its deterioration exclusion

REPLY TO ST. PAUL'S OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 2

STEIN, SUDWEEKS & HOUSER
2701 FIRST AVENUE, SUITE 430
SEATTLE, WA 98121
PHONE: 206-388-0660  FAX: 206-286-2660

regardless of what caused the damage. (See Dkt. 103, 16-20) In support of this argument St. Paul cites four cases, none of which apply Washington law or have any relevance to a determination of whether the deterioration exclusion applies to the Association's claim.[1]

While relying on irrelevant cases St. Paul ignores three cases that apply Washington law and hold that St. Pauls' deterioration exclusion does not engulf the perils of whether/rain and repeated seepage of water. Thus, in *Windsong Condominium Association v. Bankers Standard Ins. Co.*, 2008 U.S. Dist. LEXIS 125768, *13-14 (W.D. Wash. 2008), this Court rejected the same argument that St. Paul makes here, that "water damage" is really just an alternate characterization of "deterioration" and "rot" damages, and held that: "under the policies, 'water damage' is a covered peril, distinct from wear-and-tear type 'deterioration' and 'rot.'

Recently, in *Eagle Harbour Condo. Ass'n v. Allstate Ins. Co.*, 2017 U.S. Dist. LEXIS 54761, *13 (W.D. Wash. 2017), the Court relied upon *Windsong* to hold that: "St. Paul's deterioration provision excludes coverage for deterioration but not for weather and repeated water seepage." Finally, in *Greenlake Condo. Ass'n v. Allstate Ins. Co.*, 2015 U.S. Dist. LEXIS 184729, *23-24, 2015 WL 11988945 (W.D. Wash. 2015), the Court held that: "the Policy in this case treats inadequate construction; weather (rain); water damage; and deterioration, mold, or rot as four separate and distinct perils.[2]

**IV    St. Paul's Inherent Nature Of The Property Exclusion Does Not Apply.**

St. Paul's policy defines "inherent nature" as: "… any quality in the property that causes it to deteriorate or destroy itself." (Dkt. 104-2, p. 33) Factually, St. Paul claims that its inherent

---

[1] Due to space limitations, the Association cannot discuss the facts of these cases. But by way of example to show that the cases cited by St. Paul are completely irrelevant, *Angerami v. Nationwide Ins. Co.*, 509 N.Y.S.2d 298, 299, 133 Misc. 2d 1086, 1087, 1986 N.Y. Misc. LEXIS 3034, *3 (N.Y. City Ct. 1986), was a small claims case filed by an in pro per plaintiff for what was described in the opinion as "water damage, due primarily to ice and snow backup, to their residence in the winter of 1985-1986." Without discussing the applicable law or the facts the Court concluded: "This court finds, as a matter of fact, that all of the damage to the dwelling itself was caused by a gradual deterioration of the property over time and not as the result of a coverable event." *Id* at 299

[2] See also *Libbey Inc. v. Factory Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 45160, *11 (N.D. Ohio June 21, 2007) and *Cavalier Group v. Strescon Industries, Inc.*, 782 F. Supp. 946, 955-56 (D. Del. 1992) where the Courts held that damages that are caused or exacerbated by non-natural causes, such as construction defects, are not excluded by a "deterioration" exclusion.

REPLY TO ST. PAUL'S OPPOSITION TO MOTION      STEIN, SUDWEEKS & HOUSER
FOR PARTIAL SUMMARY JUDGMENT - 3      2701 FIRST AVENUE, SUITE 430
     SEATTLE, WA 98121
     PHONE: 206-388-0660    FAX: 206-286-2660

nature of the property exclusion applies because National Surety's expert (Nordstrom) "says the building's construction was not deficient according to the standards in place at the time of construction." (Dkt. 103, 12:10-12). However, the actual evidence does not match St. Paul's characterization of the evidence.

Specifically, St. Paul referred the Court to Docket 104-19, p.6, claiming that Nordstrom's deposition testimony is that "the building's construction was not deficient according to the standards in place at the time of construction." However, there is no statement by Nordstrom at the page referenced (or anywhere else) that Nordstrom's opinion is that the building's construction was not deficient.

Nordstrom's actual opinions are: (1) The omission of a "drip screed" was a code violation (Nordstrom Dep, 43:18-24, Ex 4) that was a significant cause of the damage at Sunwood;[3] (2) The water damage observed at the subject buildings is primarily due to "a variety of widespread systemic mechanisms of water intrusion" combined with lack of drainage behind the stucco, i.e., construction defects;[4] and (3) Nordstrom observed problems with the flashing at Sunwood, but because he did not have copy of the plans wasn't sure the flashing defect was a design defect or a construction defect. (Nordstrom Dep., 43:25-44:11, Ex 5)

The simple answer to St. Paul's legal argument is that case law recognizes that "… inherent vice exclusions are restricted primarily to flaws or deficiencies in the materials used; faulty design or construction is deemed not to come within the exclusions." *Chadwick v. Fire Ins. Exchange*, 17 Cal. App. 4th 1112, 21 Cal. Rptr. 2d 871, 877 (1993). In accord, *Babai v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 189114 * (W.D. Wash. Oct. 8, 2014); and *Hiller v. Allstate Prop. & Cas. Ins. Co.*, 2012 U.S. Dist. LEXIS 84862 *, 2012 WL 2325603 (E.D. Wash. June 19, 2012) ["With regard to the inherent vice exclusion, the construction defects cannot

---

[3] Nordstrom's report provides: "Both the intruding water and the lack of wall drainage have been necessary and contributing factors to the observed damage." (Dkt. 80-1, p. 33)

[4] When asked at his deposition as to what he meant by "widespread systemic mechanisms of water intrusion" Nordstrom stated that it was the same construction defects described in the J2 report. Nordstrom described the list of defects that allowed water intrusion into the walls as: "….pretty much a comprehensive list of how the water is getting in." (Nordstrom Dep., 60:18-61:5, Ex. 6)

REPLY TO ST. PAUL'S OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 4

STEIN, SUDWEEKS & HOUSER
2701 FIRST AVENUE, SUITE 430
SEATTLE, WA 98121
PHONE: 206-388-0660   FAX: 206-286-2660

properly be characterized as defects 'inherent [in the] nature of the commodity which will cause it to deteriorate with a lapse of time.'"]

St. Paul relies heavily upon *State Farm Fire & Cas. Co. v. Vo*lding, 426 S.W.2d 907 (Tex. App. 1968), a case in which the Court found that damage to porous bricks, not suitable for outside use, that crumbled from repeated exposure to freezing water, was an excluded inherent vice. St. Paul argues that: "It is difficult to see a distinction between the porous bricks used in *Volding* and the porous stucco walls and decks at Sunwood Harbour." (Dkt, 103, 13:21-23) In fact, the distinction that St. Paul claims is difficult was easily made by the Courts in *Babai* and *Hiller*, which both distinguished *Volding*.[5]

Neither *Port of Seattle v. Lexington Ins. Co.*, 111 Wash. App. 901, 909-11, 48 P.3d 334 (2002) or *Ingenco Holdings, LLC v. Ace American Ins. Co.*, 2016 WL 4051504 (W.D. Wash. 2016), the other cases cited by St. Paul, require a different result. In both those cases the Court found that the mechanical systems at issue each contained an internal design flaw that prevented an otherwise non-defective system from functioning properly.

For example, in *Port of Seattle*, the court found that an otherwise non-defective computer system with only a two-digit date field programmed into its software had an inherent vice because the software problem was an internal quality that prevented the computer from processing four-digit dates that were required starting in the year 2000. There is nothing in the Courts' reasoning in *Port of Seattle* or *Ingenco* which is inconsistent with *Babai* and *Hiller*.

V   **St. Paul's Response To *Vision One* And Concurrent Causation Distorts The Association's Position And Misstates The Facts And Applicable Case Law.**

---

[5]   In *Babai*, the Court distinguished *Volding* by first stating that the vice in an inherent vice must be inherent in the property for which recovery is sought; and that the porous bricks in *Volding* were an example of property with an inherent vice because: "The very nature of such bricks is such that they will deteriorate if exposed to weather." The *Babai* Court then explained that:

> But there is no suggestion here that either the flashings or the barrier were inherently defective or composed of a material that would bring about their own destruction over time. Rather, as was the case in a closely analogous case, "the problems with the [flashings and the barrier] were caused by an external source: the builder's failure to install them . . . properly." (citation to *Hiller* Omitted)

REPLY TO ST. PAUL'S OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 5

STEIN, SUDWEEKS & HOUSER
2701 FIRST AVENUE, SUITE 430
SEATTLE, WA 98121
PHONE: 206-388-0660  FAX: 206-286-2660

In its Motion, the Association demonstrated that based upon *Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 174 Wn.2d 501, 514-516, 276 P.3d 300 (2012), *Zhaoyun Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171, 183, 393 P.3d 748 (2017), and *Greenlake,* the law is clear that when a covered cause and an excluded cause combine to cause a loss, that loss is covered. In response, St. Paul ignores *Zhaoyun Xia*, and claims, among other things, that the portion of the *Vision One* decision relied upon by the Association is dicta that should be ignored, that the Association's argument as to why inadequate construction and water are concurrent causes is based solely on a claim that bad construction did not cause rain, and the inclusion of the language "or made worse by" in its exclusion constitutes effective anti-concurrent cause language which thereby distinguishes *Greenlake*. None of St. Paul's argument have any merit.

While St. Paul refers to the portion of the *Vision One* decision where the Court held that there was coverage when damage was caused by concurrent causes as dicta, the Washington Supreme Court does not. In *Zhaoyun Xia,* the Washington Supreme Court recently described *Vision One* as "holding that coverage existed where faulty workmanship, a covered peril, combined with an excluded peril as the efficient proximate cause of the loss." *Id.* at p. 183.

There is a portion of the *Vision One* decision that states: "To the extent defective design and faulty workmanship combined to cause the loss, they acted as concurrent causes; there is no indication the faulty design caused the faulty workmanship." *Id*. at 522. St. Paul claims that: "Seizing on this statement, Sunwood argues that construction deficiencies do not cause weather, so "wind-driven rain" is a covered, concurrent cause." (Dkt. 103, 16:17-18) St. Paul then tries to distinguish *Vision One* on the grounds that the perils in *Vision One*, faulty design and faulty construction, were concurrent causes only because they were not related to each other, and that here inadequate construction and weather are related to each other because the faulty construction consisted of the failure to make the building weathertight (Dkt 103., 17:1-3)

While the Association agrees that based upon the portion of *Vision One* quoted above that because bad construction did not cause weather/rain and vice versa, that bad construction and weather/rain are concurrent causes. However, the Association did not actually make that

REPLY TO ST. PAUL'S OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 6

STEIN, SUDWEEKS & HOUSER
2701 FIRST AVENUE, SUITE 430
SEATTLE, WA 98121
PHONE: 206-388-0660   FAX: 206-286-2660

1  argument in its Motion because it was unnecessary. In its Motion, the Association
2  demonstrated that the evidence before this Court, including the testimony of St. Paul's 30(b)(6)
3  witness quoted at page 16, lines 5-6 of the Motion (Dkt. 82), established that the damage at
4  Sunwood was caused by a combination of rain water intrusion and inadequate construction. St.
5  Paul fails to refute this evidence, or to cite a single relevant authority to support its argument
6  that to be concurrent causes have to be unrelated.

7  The Association demonstrated in its Motion that in *Greenlake*, using the *Vision One*
8  decision as a guide, the Court concluded that if the damage was caused by a combination of rain
9  and inadequate construction the damage was covered. St. Paul claims that its last two polices
10 contain exactly the same anti-concurrent causation language that the Greenlake Court said
11 would eliminate concurrent causation. (See Dkt. 103, 17:7-12). However, St. Paul completely
12 misreads its policy and misreads *Greenlake*.

13 What the *Greenlake* Court said was anti-concurrent cause language was: "Such loss is
14 excluded regardless of any other cause or event *contributing concurrently* . . . to the loss." *Id.* at
15 *31. According to St. Paul, the language that was added to its policy provided: "If the event
16 initiates a sequence of events that result in loss or damage, regardless of the nature of any
17 intermediate or final event in that sequence." (See Dkt. 104-3, p 9) The added language to St.
18 Paul's policy is identical to the example of inverse EPC language given by the Court in *Vision*
19 *One*. *Id.* at 521. Thus, the added language has nothing to do with concurrent causation.[6]

20 St. Paul's policy already had anti- concurrent causation language in its policy, just not
21 with respect to the exclusions it relied upon to deny coverage in this case. For example, St.
22 Paul's exclusion for Earth Movement (See Dkt. 104-2, p. 29) states that "Such loss is excluded
23 regardless of any other cause or event that contributes concurrently . . . to the loss."

24 In *Greenlake,* the Court specifically noted that the fact that the policy in question

---

[6] The Court in *Vision One* noted the EPC rule operates only in favor of coverage and there is no mandatory rule excluding a loss if an excluded event was the EPC. The Court noted that the "initiates a sequence of events" language included in a policy may exclude the loss if an excluded event was the EPC. It also noted that this language does not exclude concurrent causation. Different language would be needed for that.

REPLY TO ST. PAUL'S OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 7

STEIN, SUDWEEKS & HOUSER
2701 FIRST AVENUE, SUITE 430
SEATTLE, WA 98121
PHONE: 206-388-0660  FAX: 206-286-2660

contained anti-concurrent cause language in some exclusions, but not the exclusion that the insurer relied upon to deny coverage, demonstrated that the insurer was aware of the "concurrent perils" doctrine and chose to only exclude certain concurrent perils from coverage, and that as result, the policy had to be interpreted so that if inadequate construction and weather/rain were concurrent perils that combined to cause a loss, said loss is not excluded. *Id.* at *30-*31

St. Paul also argues that the language "or made worse by" in its exclusion for "wear and tear, deterioration, mold, or dry rot"[7] distinguishes its policy from *Greenlake* and constitutes effective anti-concurrent causation language. In so arguing, St. Paul ignores the fact that when it wanted to exclude concurrent causes it added the specific anti-concurrent language quoted above. St. Paul cannot convert "or made worse" into "Such loss is excluded regardless of any other cause or event contributing concurrently" simply by claiming that is what it really meant.

St. Paul also makes the following argument: (1) The *Vision One* Court stated that the language "[i]nitiates a sequence of events that results in loss or damage" "may permit the sort of **inverse efficient proximate cause analysis** we allowed for in *Findlay*[8]"and (2) "**There was no special, concurrent cause phrase in *Findlay*.** The simple 'caused by' language in the weather conditions exclusion [in *Findlay*] was sufficient to exclude the loss and no magic 'initiates a sequence of events' language was necessary." (Dkt 103, 18:10-12) Thus, according to St. Paul, by referring to *Findlay* the *Vision One* Court was stating that *Findlay* interpreted the words "caused by" to be effective anti-concurrent cause language.

In so arguing St. Paul again confuses the concepts of inverse efficient proximate cause and concurrent causation. They are different concepts and require different language in a policy to create an inverse efficient proximate cause exclusion and to negate concurrent causation from being covered. Because of this flaw, St. Paul's argument makes no sense.

---

[7] The "or made worse by" language is **not** in St. Paul's exclusion for inadequate construction.
[8] *Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 371, 917 P.2d 116, 118 (1996)

REPLY TO ST. PAUL'S OPPOSITION TO MOTION  
FOR PARTIAL SUMMARY JUDGMENT - 8

STEIN, SUDWEEKS & HOUSER  
2701 FIRST AVENUE, SUITE 430  
SEATTLE, WA 98121  
PHONE: 206-388-0660 FAX: 206-286-2660

St. Paul also misinterprets why the *Vision One* Court cited to *Findlay*. In *Findlay* weather caused a landslide. Under the policy at issue, "weather conditions are specifically excluded whenever they combine with earth movement to cause a loss." *Findlay*, 129 Wn.2d at 371, 375-76. Because the only perils at issue were excluded events and the policy explicitly excluded the combination of those events there was no coverage. *Id.*

The *Vision One* Court was not citing *Findlay* as an affirmation that the "caused by" language in the exclusion in *Findlay* was an example of effective inverse efficient proximate cause language or effective anti-concurrent causation language. Rather, as explained by the *Vision One* Court shortly before the portion of the decision relied upon by St. Paul, the Vision One Court cited *Findlay* for the proposition that: "We have left open the possibility that an insurer may draft policy language to deny coverage when an excluded peril initiates an unbroken causal chain." *Vision One*, 174 Wn.2d at 520.

*Findlay* **never** examined the meaning of the words "caused by and never found that the "caused by" language exclude coverage when weather combined with **any covered event** to cause a loss (as St. Paul would have this court believe).

**VI      St. Paul's Resulting Loss Argument Once Again Ignores *Greenlake*.**

As demonstrated in the Association's Motion, in *Greenlake* the Court interpreted a resulting loss provision similar to St. Paul's and concluded that if the ensuing peril or loss was covered there was coverage for the loss; if the ensuing loss was caused by a combination of an excluded cause and a covered cause there was coverage; and that the only way there was no coverage was if the ensuing loss or peril was solely an excluded loss. (Dkt. 82, 18:17-19:6)

St. Paul does not directly address *Greenlake* in in its Opposition. Instead, St. Paul argues that there can be no covered resulting loss because the provision in St Paul's policy is a resulting loss clause and not a resulting cause clause and "'Wind driven rain' is not a loss because it doesn't describe the condition of the building." (Dkt. 103:19-11-14)

St. Paul's argument ignores that the Washington Supreme Court has repeatedly stated that "Many events can be characterized as both a loss and a peril," and distinguishing between

REPLY TO ST. PAUL'S OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 9

STEIN, SUDWEEKS & HOUSER
2701 FIRST AVENUE, SUITE 430
SEATTLE, WA 98121
PHONE: 206-388-0660   FAX: 206-286-2660

them will at times constitute "a semantic distinction without a difference." *Vision One*, 174 Wn.2d at 518. St. Paul also ignores that the loss here is from water damage. See *Greenlake* where the Court stated at page *26: "Because water damage is not excluded, an ensuing loss of water damage that is caused by inadequate construction is covered by the policy."

**VII   St. Paul Repeats Its Unsupported Claim That There Are Multiple Occurrences.**

In its Opposition St. Paul repeats its argument that cases that find long term exposure to rain to be a single occurrence do so because they are third-party policies which define occurrence to include repeated and continuous exposure to an event, that St. Paul's policy does not define occurrence, and, therefore, long term exposure to rain cannot be a single occurrence. St. Paul's argument, which ignores at least five cases directly contrary to St. Paul's position, is dealt with at pages 14-18 of the Association's Opposition to St. Paul's Motion. (Dkt. 82)

**VIII   Under St. Paul's Deductible Provision $2,500 Is Subtracted Once From The $2,789,155 Cost To Repair Hidden Water Damage.**

St. Paul makes much of the term "occurrence", and argues that there are really multiple occurrences of loss each time it rains, and thus the $2,500 deductible swallows all coverage.[9] However, St. Paul's argument makes no sense, as St. Paul's deductible is a *"loss"* based deductible that does not use the word occurrence. (See Dkt. 104-2, p.43 for example)

The American Heritage dictionary defines "loss" as "[t]he amount of a claim on an insurer by an insured."[10]   See also *Parkridge Associates LTD v. West American Insurance Company*, CO1-372Z (W.D. Wash. 2002) at pg. 10-11 (the term loss includes "the amount of an insured's financial detriment due to the occurrence of a stipulated contingent event.") Thus, by

---

[9] St. Paul claims that deductible is really an exclusion. Yet it paradoxically claims (without citing any Washington authority because there is none) that the Association has the burden of proof of proving damage exceeds the deductible. Other jurisdictions have determined that if you treat a deductible like an exclusion it must have the same limitations as an exclusion, i.e. that that St. Paul has the burden of showing the $2,500 deductible exceeds the amount of covered loss. *See Beaumont-Gribin-Von Dyl Management Co. v. California Union Ins. Co.*, 63 Cal. App. 3d 617, 623, 134 Cal. Rptr. 25, 27 ["While technically a deductibility clause may not be an exception to insurance coverage or an exclusion therefrom, inasmuch as it too functions as a limitation on the liability of the insurer, it must be treated the same as other such limitations."]
[10] https://ahdictionary.com/word/search.html?q=loss

REPLY TO ST. PAUL'S OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 10

STEIN, SUDWEEKS & HOUSER
2701 FIRST AVENUE, SUITE 430
SEATTLE, WA 98121
PHONE: 206-388-0660  FAX: 206-286-2660

its plain language, the Association's loss is the amount of damage which the Association claims from St. Paul ($2,789,155), which undisputedly is over St. Paul's deductible.

In addition, as discussed above Courts have routinely held that progressive hidden damage is one *loss*. See *Panorama Village Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 140, 26 P.3d 910 (2001); *Greenlake*, 2015 U.S. Dist. Lexis 184729, * 33 [progressive or incremental damage, *i.e.*, damage that occurs in a "process," is treated as a single continuing "occurrence"]. St. Paul is jointly and severally liable for the entire loss at Sunwood. *Eagle Harbour*, 2017 U.S. Dist. LEXIS 54761, at *20  It is clear that proper application of St. Paul's deductible is to subtract the deductible amount $2,500 from the overall cost of repair of $2,789,155.  See *Skinner Corp. v. Fireman's Fund Ins. Co.*, 1996 U.S. Dist. LEXIS 9321, *7, (W.D. Wash 1996)(insured must pay "a single **deductible** for all claims arising out of the presence of asbestos on board that vessel" to an insurer who is jointly and severally liable for the entire loss.)

**IX**     **St. Paul's Late Notice Defense Should Be Dismissed.**

In arguing that the Association had a duty to provide notice to St. Paul by the end of its policy period at latest, St. Paul does not address any of the authority cited by the Association including *Eagle Harbour Condo. Ass'n v. Allstate Ins. Co.*, 2017 U.S. Dist. LEXIS 56292, *4, 2017 WL 1316936 (W.D. Wash. Apr. 12, 2017) and *Greenlake Condominium Association v. Allstate Insurance Company*, No. C14-1860-BJR, at *7-8 (W.D. Wash. Apr. 25, 2016), where the Court  determined that: (1) for claims for hidden damage from wind-driven rain, the *Panorama* Rule applies with equal force to an insurers late notice provision; and (2) despite "numerous assorted water intrusion issues" at *Greenlake*, under *Panorama* hidden damage was not exposed, and thus there was no duty to provide notice until the Association's intrusive investigation in 2013 and 2014. *Greenlake Condominium Association v. Allstate Insurance Company*, No. C14-1860-BJR, at *6-8 (W.D. Wash. Apr. 25, 2016).

Instead, St. Paul argues that the Association had knowledge of its loss because "Board Minutes from 1998 reference a damage issue in a stair well where there is a south wind

REPLY TO ST. PAUL'S OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT - 11

STEIN, SUDWEEKS & HOUSER
2701 FIRST AVENUE, SUITE 430
SEATTLE, WA 98121
PHONE: 206-388-0660  FAX: 206-286-2660

accompanied by rain. (Dkt. 104-27 p. 6)" (Dkt. 103, 24:1-3) However, the reference to Dkt. 104-27 p. 6 is not to 1998 Board Minutes, but to a summary prepared by a former party's expert which refers to a caretaker's report and from which it is impossible to tell whether the drywall issue is in the stucco buildings (at issue in this claim) or the phase II cedar buildings (not at issue in this claim). In short, this summary is inadmissible hearsay and there is no admissible evidence to support St. Paul's late notice defense.

If this Court determines the Association had an obligation to submit its claim to St. Paul prior to the 2014 intrusive investigation, St. Paul's late notice defense should still be dismissed because St. Paul is unable to demonstrate prejudice. *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 890, 297 P.3d 688 (2013) [the insurer must show that late notice actually and substantially prejudiced its interests before performance of its duties will be excused].

St. Paul's main argument for why it is prejudiced is that if it had notice earlier, it could have paid to repair the damage or investigated earlier. However, this exact argument was rejected in *Churchill v. Factory Mut. Ins. Co.*, 234 F. Supp. 2d 1182, 1190 (W.D. Wash. 2002).

In *Churchill*, the loss at issue involve a claim for water damage and mold to the Alderwood mall. The insurer submitted an affidavit stating it had been prejudiced because "if repair work had been done earlier to correct the causes of the water intrusion, deterioration and fungal growth could have been precluded or significantly reduced." *Id.* The Court determined that this affidavit was "insufficient to show prejudice" and dismissed the insurers late notice defense. *Id.* Similarly, St. Paul's argument is insufficient to support a showing of prejudice and St. Paul's late notice defense should be dismissed.

```
                              STEIN, SUDWEEKS & HOUSER, PLLC
                              By:    /s/ Justin Sudweeks
                                     Justin Sudweeks, WSBA 28755
                                     Attorneys for Plaintiff
                                     2701 First Avenue, Suite 430
                                     Seattle, WA 98121
                                     Email: justin@condodefects.com
                                     Telephone: (206) 388-0660
                                     Facsimile:  (206) 286-2660
```